IN THE

# COURT OF ERRORS AND APPEALS

## OF THE STATE OF NEW JERSEY,

## ON APPEAL FROM THE COURT OF CHANCERY,

### JUNE TERM, 1880.

SAMUEL C. THORNTON, appellant,

*v.*

ELLEN E. OGDEN and others, respondents.

<div style="float:right">

| 32 | 723 |
|----|-----|
| 63 | 248 |
| 32 | 723 |
| e66 | 118 |

</div>

1. A conveyance obtained by a brother from his unmarried sister, who was an inmate of his house, the circumstances showing that such conveyance was executed in the confidence that the brother would deal justly with her, set aside, it appearing that the consideration was largely inadequate.

2. When the testimony is adapted to the general frame of the bill, although it does not conform to it in every particular, an amendment of such bill is not in all cases necessary before decree.

3. *Query*, Whether an amendment of a bill at the final hearing can be allowed, when such amendment consists of facts that falsify materially the facts originally stated.

On appeal from a decree of the vice-chancellor, reported in *Ogden* v. *Thornton, 3 Stew. Eq. 569.*

NOTE.—No brief on the part of the respondents in this case was furnished to the reporter.—REP.

47

Thornton *v.* Ogden.

*Mr. B. Gummere,* for appellant, cited—

*Ferraby* v. *Hobson,* 2 *Phill. 255, 258 ; 'Price* v. *Benington, 3 MacN. & G. 486, 498–9 ; Wilde* v. *Gibson, 1 H. of L. Cas. 605, 621–2 ; Hickson* v. *Lombard, L. R. (1 H. of L). 334, 336 ; Eyre* v. *Potter, 15 How. 43 ; Hoyt* v. *Hoyt, 12 C. E. Gr. 399.*

*Mr. Fred. Voorhees,* for appellant, cited—

*Hoyt* v. *Hoyt, 12 C. E. Gr. 399 ; Dudley* v. *Dickson, 1 Mc-Cart. 252 ; Corlies* v. *Howland, 11 C. E. Gr. 311 ; Stew. Dig. p. 972 §§ 184, 188, 192.*

*Mr. J. Augustus Fay,* for respondent.

The opinion of the court was delivered by

BEASLEY, C. J.

The complainant in the court of chancery is the sister of the defendant, who is the appellant in this court. The object of the bill is to vacate a deed made by the former to the latter, bearing date April 14th, 1858. The premises thus conveyed were owned by the father of these parties, who died intestate, March 19th, 1858. The consideration mentioned in the conveyance is $3,000. The complainant states the following as the grounds of the relief prayed by her : She says that, shortly after her father's death, she and her mother being members of her brother's household, she was urged by him to execute some paper authorizing him to control and manage the entire estate, holding out to her that otherwise the homestead and all the property would have to be sold and sacrificed, but that, by executing such a document, he could settle the estate without trouble, and that all her interests should be protected, and that she should have a full share of her father's estate ; that at that time she was engaged to be married, and that the defendant, being opposed to such alliance, insisted that if she

Thornton *v.* Ogden.

should marry there would be trouble about dividing this property ; and that, " being then young and inexperienced, and suffering from grief at the loss of her father and natural protector," she was entirely dependent upon, and had full confidence in, the honor, integrity and brotherly affection of the defendant, who was her only brother, and so, by reason of her youth, inexperience and blind reliance upon the defendant, she executed the deed in question. The conveyance so made passed the share of the complainant in a valuable house and lot, of which her father had died seized.

The answer to this complaint is, that the complainant executed the deed in question voluntarily, and without any deception being practiced on her by the defendant; and that the consideration moving her to the act, was the provision by him of a home for her till her marriage, and the promise of her mother to leave her, by her will, " her one-third interest" in two certain dwelling-houses in Philadelphia, " for her natural life, and to her children, if any she had." The mother died without making a will, so that the property in Philadelphia passed to the complainant and defendant, as her heirs, and it has been divided equally between them. The defendant contends that he offered to carry out the promise of the mother to his sister, and to cede to her all the last-mentioned property, but that she rejected such offer. It therefore appears that the complainant, for her half of this valuable property, has received nothing whatever, except her board for something short of three years.

In the court below, the complainant was successful, the decree being that the defendant should pay the complainant the sum of $3,000, with lawful interest from the 1st of February, 1861, as and for the purchase-money for the interest of the complainant in the premises in question; and that such sum should be and remain a lien upon the same, as a vendor's lien for purchase-money, until the payment of the moneys so charged. The appellant now objects to this decree, for the reason that it is founded on an assumed state of facts that does not harmonize with the proofs in the case, nor

with the contention of either of the parties to the suit. It is not improbable that this decree would approximate to an equitable adjustment, but, nevertheless, I have not been able to controvert this objection to it. The result reached can be justified only on the idea that the one party agreed to buy, and the other to sell, this land for $3,000; and both parties, in their pleadings and by their testimony, utterly repudiate such an idea. The difficulty is, the decree enforces a bargain that was never entered into. It is true that an amendment of the bill has been allowed, consisting of a claim that, if this deed should be deemed a valid deed, the consideration therein fixed should be paid to the complainant, and declared to be a vendor's lien upon the premises; but, how can such a statement avail, when the complainant herself has testified that she did not agree to take, nor did the defendant agree to give her, the consideration money thus mentioned?

To avoid misapprehension with respect to the principle regulating amendments on final hearing, it is proper to say that I greatly doubt the legality of the exercise of that power on this occasion. The extreme case is presented of a party's being authorized not only to set up new facts by amendment, but to set up such facts as are a falsification of the facts originally stated. It is not remembered that any decision has gone that length; but it is not necessary now to consider or to decide the point, because the amendment in this case, if made and if sanctioned, must still be unavailable, as it is not supported by the evidence. The decree, having no basis to rest upon, cannot be sustained.

Still, I think the complainant is not remediless in the present suit. The bill, although badly drawn, in view of the proofs, is sufficient for the purpose. The gravamen of the complainant's case, as set up by her, is that she had confidence in her brother, and she conveyed this property to him, he promising that she should have a fair share of the estate. I am inclined to believe, after looking at the testimony with care, that this was the general understanding;

and, whilst the mode in which this result was to be effected was spoken of, such arrangement was so indefinite and unfixed that it could hardly be called a part of the bargain. She says, when a witness, "I was to have all my father's books of account, all my mother's personal and real estate, and the real and personal estate of a maiden aunt after whom I was named." This aunt was examined, and she testified that the complainant's mother promised the complainant, if she signed the deed, "to give her everything she had in her own right—all her own property." The defendant, on the other hand, says that the mother was to give her nothing but her real estate, on a limitation to her for life, and then to her children, if she had any, with remainder to himself in the event of her dying without issue.

From these incompatibilities, and from the absence of all writing on the subject, I should be inclined to infer that, at the time the deed was executed, there was nothing absolutely settled, except that a general obligation was imposed on the defendant to see that, in some way, justice should be done, in this affair, to the complainant. This view would support the bill and serve as the basis of an equitable decree. But if, on the other hand, we should assume that there was a bargain such as the defendant interposes and sets forth in his answer, the aspect of the litigation, in an equitable point of view, would not be changed, according to my construction of the rights of these parties; for, if we assume that the understanding was that, when this conveyance was made, the defendant promised that right should be done to her, or was founded on the consideration that she should have the lands of her mother, subject to the limitations mentioned, the result, in my judgment, will be the same. In either case the transaction was such that it cannot be allowed to stand in a court of conscience.

It is impossible to shut out the fact that this defendant, at the time of the doing of this act, occupied a fiduciary relationship towards the complainant. They were brother and

sister. She was living in his house, her father having just died. She was wholly inexperienced, and he knew that she was dealing about matters with which she was wholly unac-. quainted, for there is no reason to believe that she had the least idea, except as she gained it from the statements of the defendant, of the respective values of the properties in question.

The inevitable inference, from this situation, is, that the defendant knew that his sister trusted him with implicit confidence, and that she had no other friend or counsellor. The law, therefore, exacted that, under such circumstances, he should act with the utmost candor and most perfect good faith. Did he do so? For that is the test of the legality of the transaction. This interrogatory must be answered in the negative, for it is entirely out of the question to suppose that, even admitting the understanding was just as the defendant himself says it was, any person of ordinary experience in business would have advised the complainant to enter into it. It was an unfair and most losing bargain so far as she was concerned. She passed away land in which she had a present interest and to which she had an absolute title. The land she was to take as an equivalent was of much less value; she was to have no interest in it until after the death of her mother, and then only an estate for life, with remainder to her children, and, in default of children, with remainder to the defendant. Nor, when she parted with the title to her land, had she any assurance that even this poor return would be made to her, except the verbal promise of her mother. The consideration thus moving to the complainant was neither adequate nor secure. The event showed the risk she ran, for her mother died without making a will. For over fifteen years she has been deprived of the enjoyment of the greater part of her inheritance, and such result was the probable outcome of the bargain as it is insisted on by her brother in his answer and testimony. It appears very clear that such a bargain, between persons occupying the relationship of

these litigants, cannot equitably be allowed to stand, as it is altogether devoid of that scrupulous fairness and equality which is required when one of the parties to the transaction stands in a fiduciary position towards the other. It is not necessary to impute bad faith or fraudulent purpose to the defendant; it is sufficient to say that, in this matter, he has not exhibited that *uberrima fides* that the rules of equity exact. On this account he must be declared to hold his sister's moiety of the property in question in trust for her, and, in the capacity of a trustee, he must account to her for it.

Let the decree, therefore, be reversed, and a trust of this character be declared. An account must be taken, and the defendant charged with one-third of the annual value of the property since the date of the first marriage of the complainant till the death of his mother, and, from the time of such death, with the annual value of one-half of such property; the complainant, on such accounting, being charged with one-half of the cost of such improvements as have added a permanent value to such property, with the interest on such costs. Neither party should recover costs on this appeal, but the respondent is entitled to her costs in the court below.

Decree unanimously reversed.